687 P.2d 1247

**STATE of Arizona, Appellee,**

v.

**Donald Eugene HARDING, Appellant.**

No. 5742.

Supreme Court of Arizona,
En Banc.

May 30, 1984.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Diane M. Ramsey and Jack Roberts Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by H. Allen Gerhardt, Deputy Public Defender, Phoenix, for appellant.

HAYS, Justice.

Appellant, Donald Harding, was convicted of first degree murder, A.R.S. § 13–1105; robbery, A.R.S. § 13–1902; and theft, A.R.S. § 13–1802. Appellant was sentenced to death for the murder, five years imprisonment for the robbery, and ten years imprisonment for the theft. The robbery and theft sentences were to run concurrently to each other, but consecutively to the murder sentence. The murder sentence was to run consecutively to sentences imposed upon appellant in Pima County cause numbers CR–04694 (conviction of "Dangerous or deadly assault by prisoner," A.R.S. § 13–1206) and CR–02597 (convictions of two counts of first degree murder, two counts of robbery, two counts of kidnapping, and theft, all affirmed by this court, *see State v. Harding*, 137 Ariz. 278, 670 P.2d 383 (1983)). Appellant's case was automatically appealed to this court. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. §§ 13–4031 and 13–4035. We affirm.

In addition to our independent review of the aggravating and mitigating circumstances found by the trial judge, our proportionality review, and our review of the record for fundamental error, seven issues confront us:

1. whether appellant's right to a speedy trial pursuant to 17 A.R.S. Rules of Crimi-

nal Procedure, rule 8, was violated, and if so, whether reversal is required;

2. whether prospective jurors were improperly excused;

3. whether evidence of a prior bad act was improperly admitted;

4. whether a gun was improperly admitted;

5. whether the trial court erred in ruling that appellant could be impeached with prior convictions;

6. whether a photograph was improperly admitted; and

7. whether Arizona's death penalty statute is unconstitutional. Between 1:00 and 1:30 a.m. on January 25, 1980 the victim, Allan Gage, checked into the Mission Motel on East Van Buren in Phoenix. At 11:00 that morning the hotel manager entered Gage's room and found Gage's body. Police officers arrived and found that Gage's ankles and wrists had been bound with adhesive tape and his ankles tied to his wrists behind his back in a "hog-tie" manner with drapery cord burned off a drape in the room. The tape used to bind his ankles and wrists belonged to the victim (being used to secure a colostomy bag to his body). Gage was lying on the floor, with his face on a pillow. The victim had been gagged: a washcloth was stuffed in his mouth; tape was placed over his mouth, keeping the washcloth in place; and strips of a torn pillowcase were placed around the face area, apparently over the tape and over Gage's eyes. There was no sign of a struggle in the room. The medical examiner testified that the washcloth was stuffed far enough down his throat that Gage could not breathe even through his nose. Gage died slowly from asphyxiation because of the gagging. Gage's wallets (he carried two) and car were missing.

Appellant was arrested in Flagstaff on January 26. Police found Gage's wallet and identification in a suitcase in the car appellant was driving. Gage's car was found on January 27 in the La Quinta Hotel parking lot in Tucson.

## I. SPEEDY TRIAL

Appellant argues that rule 8.1(e) of the Arizona speedy trial rules, 17 A.R.S. Rules of Criminal Procedure, was violated, requiring reversal of his convictions. Appellant contends that the state's request for a hearing to suspend the rules was untimely filed, that the hearing was untimely held, and that the trial court suspended the rule before it was authorized to do so.

When appellant was arraigned, rule 8.1(e) provided in relevant part that "[w]ithin five days [1] after the arraignment in Superior Court either party may apply in writing to the court for a hearing to establish extraordinary circumstances requiring the suspension of Rule 8 in a particular case." In the present case appellant was arraigned on May 21, 1980. The state on May 29, 1980 filed a motion for a hearing to establish extraordinary circumstances. Thus, as appellant contends, the state's motion was untimely. The court nevertheless held the requested hearing and ultimately suspended rule 8.

We hold that this violation of rule 8 does not require reversal of appellant's convictions. Technically, the state's request for a hearing should have been filed three days earlier. However, before reversal is required because of such a violation, the appellant must show that he was prejudiced by the delay. See State v. Zuck, 134 Ariz. 509, 515, 658 P.2d 162, 168 (1983). Appellant in this case has not alleged any prejudice. Further, after examining the circumstances, we do not find any prejudice to appellant, such as loss of testimony or other evidence, caused by this three-day delay. This is not the type of extended delay as occurred in State v. Tucker, 133 Ariz. 304, 651 P.2d 359 (1982).

Appellant next contends the hearing was untimely held. The pertinent part of rule 8.1(e) requires that "[w]ithin five days of the receipt of the application the court shall hold the hearing and make findings of

1. In the current rule the time limit has been expanded to twenty-five days.

fact." On May 29, 1980 the state filed its application for a hearing. On May 30, 1980 the court set the hearing for June 3, 1980, within the five-day limit. On June 3, 1980 the appellant was absent from the courtroom; he was being held in Pima County for two murders and had not been transported to Maricopa County for the rule-8 hearing. The court then ·continued the hearing to June 13, 1980, at which time the hearing was held.

The hearing was set to be held within the five-day trial limit, but was not held on the date set solely because appellant was absent. The trial court prudently extended the hearing date to a time appellant would be present. We find no error.

■ Finally, appellant contends the court suspended the rule before it was authorized to do so. The pertinent part of rule 8.1(e) requires the trial court to make findings of fact, then transmit those findings to the chief justice of the Arizona Supreme Court who may approve or decline to approve them. If the findings are approved, upon motion of either party, the trial court may suspend rule 8. Appellant alleges the trial court suspended the time limits before any findings of fact were approved by the chief justice, and urges that this procedural defect invalidates the suspension.

Upon close inspection, however, it appears that the trial court did not actually suspend the time limits before the chief justice approved the findings of fact. In a minute entry, the trial court did say "IT IS ORDERED granting the State's Motion for Suspension of Rule 8 Time Limits." In the same minute entry, however, the court also said "IT IS ORDERED that the Clerk of the Court, pursuant to said Rule, transmit the Court's findings to the Chief Justice of the Supreme Court of Arizona for determination with said Rule." The latter statement indicates that the court knew it could not suspend rule 8 without first submitting its findings to the chief justice. Thus, although the court said it was suspending rule 8, all it really did was delay further action until the chief justice examined the findings of fact. This misuse of language

by the trial court was nonprejudicial technical error, not requiring reversal. *See* Ariz. Const. art. 6, § 27.

## II. JURY EMPANELING

During jury *voir dire* the court stated the following:

If the Defendant, Mr. Harding, is found guilty of First Degree Murder, the Court—that is, the Judge—without any verdict or advice from the Jury then must determine the punishment.

The Court would like to know at this time whether any of you on the panel entertain conscientious or religious opinions, scruples or feelings concerning the death penalty, which would prevent you from finding the Defendant guilty, even if you were satisfied beyond a reasonable doubt from the evidence that the Defendant is, in fact, guilty of First Degree Murder?

Those who answered the question affirmatively were excused.

■ It is proper to inquire whether a prospective juror's attitude concerning the death penalty would prevent him from making an impartial decision. *See State v. Clark*, 126 Ariz. 428, 431, 616 P.2d 888, 891, *cert. denied*, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980). Further, the question quoted above is identical in concept to the question we approved in *State v. Smith*, 123 Ariz. 231, 137–38, 599 P.2d 187, 193–94 (1979).

■ Nevertheless, appellant argues that this question posed to the prospective jurors did not probe deeply enough and that the trial court thereby "erred in failing to question the jurors further to determine if their oath would overcome any hesitancy on their part to be fair." We note, however, that the question was very clear, and that the only jurors excused were those that clearly answered the question affirmatively. Under the circumstances, any further questioning was unnecessary.

## III. PRIOR BAD ACT

The third alleged error is that the trial court improperly admitted testimony of

Ronald Svetgoff, who was robbed by appellant about one month before the incident at issue. Appellant contends that introduction of Svetgoff's testimony brought to the jury's attention other bad acts in contravention of 17 A.R.S. Arizona Rules of Evidence, rule 404(b). That rule states:

> **Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The state contends that Svetgoff's testimony was properly admitted to demonstrate a modus operandi which in turn established the identity of the perpetrator and common scheme or plan. *See State v. Jackson*, 124 Ariz. 202, 204, 603 P.2d 94, 96 (1979).

■ For evidence of a prior crime to be admissible to establish identity or common scheme, the circumstances surrounding the prior crime must be sufficiently similar to the crime at issue. *E.g., State v. Brown*, 125 Ariz. 160, 161, 608 P.2d 299, 300 (1980). The "[s]imilarities between the offenses ... must be in those aspects where normally there could be expected to be found differences." *State v. Akins*, 94 Ariz. 263, 266, 383 P.2d 180, 182–83 (1963); *State v. Harding*, 137 Ariz. 278, 289, 670 P.2d 383, 394 (1983). Finally, differences between the acts must be considered in addition to similarities. *E.g., Jackson, supra*, 124 Ariz. at 204, 603 P.2d at 96.

■ Svetgoff testified that about one month before the incident at issue he was confronted by the appellant at a Sheraton Inn hotel in Waco, Texas. Appellant, dressed like a security guard, approached Svetgoff when he was outside his room obtaining ice. Appellant asked Svetgoff if he was a guest at the hotel, and then asked for identification. The two men went to Svetgoff's room to get the identification. Once in the room, appellant pulled a gun and told Svetgoff to lie on the floor. Svetgoff's hands were secured behind his back

with a necktie, his legs were tied together with a dress shirt, and his legs and hands were bound together with a jump rope he carried with him when travelling. Appellant next stuffed a sock into Svetgoff's mouth, secured the sock by tying a t-shirt around Svetgoff's head, and covered Svetgoff's eyes with another shirt around the head. Finally, appellant dragged Svetgoff into the bathroom and left him facedown on a pillow. Fortunately for Svetgoff, after appellant left the room, Svetgoff was able to stretch the tie enough to free himself. Svetgoff then discovered that his personal effects and car were missing. Svetgoff's car was later found at a hotel in Dallas, approximately 100–120 miles from the hotel in Waco.

Svetgoff's testimony tends to establish the identity of Allan Gage's murderer. Both Svetgoff and Gage were hog-tied with materials already in the hotel room. In both cases a cloth gag was stuffed into the victim's mouth and secured. Both victims were left facedown on a pillow. Both victims' personal effects were taken, and the cars of both victims were found at a hotel in a distant city.

Admittedly there are differences between the Svetgoff and Gage episodes. Appellant points out that the Svetgoff incident occurred in another state, and that the class of the hotels involved was dissimilar (the Svetgoff incident occurring at a Sheraton Inn and the Gage incident occurring at a hotel frequented by prostitutes). We find that these dissimilarities are not significant enough to negate the probative value established by the similarities. We note another difference: the ultimate fate of the victims. However, Svetgoff testified that the sock was pushed far enough down his throat that he had great difficulty breathing, and that he was able to free himself because he was able to stretch the tie binding his hands. Thus, only a slight difference in the binding material used and gagging method used on Svetgoff created the difference in the fate of the victims. We conclude that in "those important aspects where normally there could be ex-

pected to be found differences" between the offenses, *Akins, supra,* the similarities between the Svetgoff and Gage incidents tend to prove the identity of the perpetrator.

The Svetgoff incident was also admissible to show common scheme or plan. There was no evidence of forcible entry into Gage's hotel room or a struggle inside. Svetgoff testified that he was duped into admitting the appellant into his room by appellant's use of a security guard ruse. The officers who apprehended appellant found false security guard badges and a dark suit similar to the one used, or the actual one used, in the Svetgoff incident. Svetgoff's testimony was relevant and probative to establish common scheme or plan.

## IV. ADMISSIBILITY OF THE GUN

█ When appellant was arrested in Flagstaff, he possessed a handgun. Appellant argues that the gun was admitted in violation of 17 A.R.S. Arizona Rules of Evidence, rules 403 and 404(b). He claims that admission of the gun prejudiced him by associating him with a "bad act" and was not probative because there was no evidence that a gun was used in committing the Gage crime.

We conclude that the gun was properly admitted as evidence demonstrating modus operandi. Svetgoff testified he was duped into admitting appellant into his room by appellant's use of a security guard ruse. Consistent with such a ruse, in the Gage incident there was no evidence of forcible entry. Also, Svetgoff testified that once inside the room appellant pulled a gun and told Svetgoff to lie on the floor. Again consistent with the security guard ruse and the use of a gun to control the victim, there was no evidence of a struggle in Gage's room. Further, Svetgoff testified that the gun taken from appellant upon his arrest in Flagstaff was similar to the one used against Svetgoff. Finally, as stated earlier, the arresting officers found false security guard badges and a suit similar to the one used, or the actual one used, in the Svetgoff incident, thus bolstering the evi-

dence that the security guard ruse method of operation was used against Gage. The gun was admissible to show modus operandi.

## V. IMPEACHMENT WITH PRIOR CONVICTIONS

Before trial, the court held a hearing pursuant to Arizona Rules of Evidence, rule 609, to determine the admissibility, for impeachment purposes, of appellant's prior convictions. Under rule 609 the general rule for admissibility is that (1) the probative value of the felony must outweigh its prejudicial effect, and (2) the crime must have been punishable by death or imprisonment in excess of one year under the law under which defendant was convicted, or, the crime must have involved dishonesty.

Appellant has been convicted of numerous felonies; the crimes the state desired to use for impeachment purposes were: 1964 Arkansas convictions of 4 counts of burglary and 3 counts of grand larceny; a 1970 Arkansas conviction for attempted escape (appellant was not released from the Arkansas burglary, grand larceny, or attempted escape convictions until at least 1973, thus eliminating any doubt about compliance with the time limit of rule 609(b), which requires the conviction or release date of the prior crime to be within ten years of the instant offense); a 1975 conviction in federal court for "Conspiracy to commit offense or defraud United States," 18 U.S.C. § 371; and a 1981 Arizona conviction for "Dangerous or deadly assault by prisoner," A.R.S. § 13–1206. The court ruled that all of these convictions were admissible, explicitly finding their probative value to outweigh any prejudicial effect. The state agreed not to use, and the court in fact held that the state could not use, two recent Arizona first degree murder convictions.

█ Appellant argues that a ruling allowing impeachment with one or two prior convictions would have been proper, but that allowing impeachment with all of these convictions was unfairly prejudicial. We first note that the admission of multi-

ple prior felonies for the limited purpose of impeaching a defendant if he testifies is certainly not per se improper and has been upheld on several occasions. *See, e.g., State v. Woratzeck,* 130 Ariz. 499, 502, 637 P.2d 301, 304 (App.1981); *State v. Soule,* 121 Ariz. 505, 507, 591 P.2d 993, 995 (App. 1979). Further, the question is whether the trial court abused its discretion in finding that the probative value of the convictions outweighed their prejudicial effect. *State v. Sullivan,* 130 Ariz. 213, 217, 635 P.2d 501, 505 (1981).

▆ Any felony has probative value on the issue of the credibility of a defendant. *See State v. Dalglish,* 131 Ariz. 133, 138, 639 P.2d 323, 328 (1982). In the present case there were no witnesses to the crime, so the credibility of appellant was a vital consideration. *See State v. Gillies,* 135 Ariz. 500, 507, 662 P.2d 1007, 1014 (1983). If appellant had testified, it would have been important for the jury, when considering appellant's credibility, to possess information about appellant's history of convictions, so as not to be improperly led to believe that appellant had a pristine past or that his actions reflecting negatively on his credibility were mere isolated incidents. *See State v. Domme,* 111 Ariz. 464, 465, 532 P.2d 526, 527 (1975) (one of the factors to consider is the defendant's conduct since the prior offense). The court considered the matter and explicitly found that the probative value of the convictions at issue outweighed their prejudicial effect. The trial court did not abuse its discretion. *See State v. Watkins,* 133 Ariz. 1, 2–3, 648 P.2d 116, 117–18 (1982) ("The rule only requires the trial court to independently weigh the probative value of the prior conviction against the prejudicial effect. In this case, the court did all that the rule requires. We find no abuse of discretion....").

## VI. ADMISSIBILITY OF THE PHOTO-GRAPH

The appellant contends that the trial court erred by admitting a photograph of the victim. The photo shows the face of the victim, the gag, and blood on the gag that apparently came from the victim's mouth. Appellant contends the photograph was inflammatory and without probative value.

▆ To be admissible, a photograph must be relevant to an issue in the case, and its probative value must outweigh the danger of prejudice. *State v. Chapple,* 135 Ariz. 281, 288, 660 P.2d 1208, 1215 (1983). We will not upset the trial court's decision absent a clear abuse of discretion. *Id.* at 290, 660 P.2d at 1217.

▆ In *Chapple* we stated that "the fact and cause of death are always relevant in a murder prosecution." *Id.* at 288, 660 P.2d at 1215. In the present case, therefore, the photo was relevant. We also stated in *Chapple* that unless the question the photograph tends to prove or disprove is actually contested, the photograph generally would not be admissible. *See id.* In the present case a contested issue was the identity of the perpetrator; the photograph, by showing the gag technique, helped demonstrate a modus operandi and therefore helped establish the identity of the perpetrator. Nevertheless, the matters illustrated in the photograph were cumulative of uncontroverted testimony. We find, therefore, that the photograph had little probative value. *See id.* at 289, 660 P.2d at 1216. We also conclude, however, that the photograph was not gruesome and therefore not unfairly prejudicial: the photograph was a 3½" × 5" picture of the victim's face with a gag around the mouth and with some blood on the gag that apparently came from the victim's mouth. The picture does not show the result of any violence to the victim except the gag around the mouth. The trial court did not abuse its discretion.

## VII. CONSTITUTIONALITY OF THE ARIZONA DEATH PENALTY STATUTE

▆ Appellant raises several issues concerning the Arizona death penalty statute. All but one of those issues have been addressed by this court before in *State v.*

*Jordan,* 137 Ariz. 504, 507, 672 P.2d 169, 172 (1983); *State v. Gillies,* 135 Ariz. 500, 507–08, 662 P.2d 1007, 1014–15 (1983); or *State v. Blazak,* 131 Ariz. 598, 601, 643 P.2d 694, 697 (1982).

Appellant's only argument not previously addressed by this court concerns the aggravating circumstance set forth in A.R.S. § 13–703(F)(5)—that the defendant committed the offense "as consideration for the receipt, or in expectation of the receipt, of anything of pecuniary value." In *Gillies, supra,* which involved an intentional killing, we held that this aggravating circumstance did not apply, even though items of pecuniary value were taken, because the reason for the murder was "to eliminate the victim as a witness to her own rape," *id.* at 512, 662 P.2d at 1019, and not to gain monetarily. Appellant states that this aggravating circumstance would be found in the case of an unintentional killing that was part of a theft. Appellant then argues that a statutory sentencing scheme in which an intentional killing to eliminate a witness is not an aggravating circumstance whereas an unintentional killing that was part of a theft is an aggravating circumstance is an arbitrary and capricious sentencing scheme.

We first note that, contrary to appellant's assertion, not every taking of property associated with an unintentional killing would give rise to a finding of the aggravating circumstance set forth in A.R.S. § 13–703(F)(5). Rather, before this aggravating circumstance may be found, a cause of the murder must be pecuniary gain. *Gillies, supra.* Second, we agree with the state that there is no single list of aggravating circumstances that is constitutionally acceptable. Rather, the inclusion of a killing motivated by pecuniary gain on the list, as opposed to other factors, is a proper determination for the legislature. *See State v. Bly,* 127 Ariz. 370, 621 P.2d 279 (1980).

## INDEPENDENT REVIEW OF AGGRAVATING AND MITIGATING CIRCUMSTANCES

At sentencing, the court found four aggravating circumstances and no mitigating

circumstances sufficiently substantial to call for leniency, and then sentenced appellant to death. Pursuant to *State v. Richmond,* 114 Ariz. 186, 560 P.2d 41 (1976), *cert. denied,* 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977), we independently review the record to determine the existence or absence of aggravating and mitigating circumstances, and determine whether the death penalty should be imposed.

The first aggravating circumstance found by the trial court was that appellant had been convicted of a prior crime for which a sentence of life imprisonment or death was imposable in Arizona. A.R.S. § 13–703(F)(1). The record establishes that the defendant has been convicted in Arizona of "Dangerous or deadly assault by prisoner," A.R.S. § 13–1206, which is punishable by life imprisonment, *id.,* and two counts of first degree murder, A.R.S. § 13–1105, punishable by life imprisonment or death, A.R.S. § 13–703. The trial court correctly found this aggravating circumstance.

The second aggravating circumstance found by the sentencing court was that appellant previously had been convicted of a felony involving the use or threat of violence on another person, A.R.S. § 13–703(F)(2). The assault and murders just described fulfill this aggravating circumstance.

The third aggravating circumstance found by the trial court was that the murder was committed in the expectation of pecuniary gain. A.R.S. § 13–703(F)(5). Pecuniary gain must be a cause of the murder, not just a result. *E.g., State v. Gillies,* 135 Ariz. 500, 512, 662 P.2d 1007, 1019 (1983). In the present case we agree with the sentencing court's finding that the purpose for binding and gagging the victim was to facilitate the robbery and hinder detection. Further, the victim died as a direct result of the binding and gagging during the commission of the offense. The trial court correctly found this aggravating circumstance.

■ The final aggravating circumstance found by the sentencing court was that the murder was committed in an especially heinous, cruel, or depraved manner. A.R.S. § 13–703(F)(6). Cruelty refers to the mental and physical pain suffered by the victim. *State v. Clark*, 126 Ariz. 428, 436, 616 P.2d 888, 896, *cert. denied*, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980). It is clear that the murder was committed in a cruel manner. We agree with the analysis by the sentencing court:

> The evidence in this case indicates that the victim's hands and feet were securely and separately bound with tape, then the victim's hands and feet were tightly bound together behind his back. A wash cloth gag was stuffed inside the victim's mouth, taped in place, then secured with torn strips of cloth, and the victim was left face down with his head in a pillow. The evidence indicates that the victim did not die instantaneously, but rather died slowly, his death being caused by asphyxiation due to his being gagged as he was.

The record establishes beyond a resonable doubt that the offense was committed in a cruel manner.

As mitigation, the appellant argued he could not be given the death penalty because of *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). That case provides that the death sentence cannot be imposed unless it is determined beyond a reasonable doubt that the defendant killed, attempted to kill, or intended to kill. *See also State v. McDaniel*, 136 Ariz. 188, 199, 665 P.2d 70, 81 (1983). The sentencing court specifically found that under the circumstances of this case *Enmund* does not mandate a sentence of life imprisonment. That court did not explicitly make that finding beyond a reasonable doubt. Nevertheless, the record establishes beyond a reasonable doubt that appellant killed Allan Gage. Appellant stuffed a washcloth down Gage's throat and secured that cloth with tape and strips of torn pillowcase; Gage died from asphyxiation because the washcloth blocked his breath-ing passages. *Enmund* does not prevent imposition of the death penalty.

After reviewing the record, we agree with the sentencing court that there are no mitigating circumstances sufficiently substantial to call for leniency.

### PROPORTIONALITY REVIEW

■ This court conducts a proportionality review to determine "whether the sentences of death are excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." *State v. Richmond*, 114 Ariz. 186, 196, 560 P.2d 41, 51 (1976), *cert. denied*, 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977). We consider not only cases where the death penalty was affirmed, but also cases where the death penalty was reduced to a sentence of life imprisonment. *State v. McCall*, 139 Ariz. 147, 162, 677 P.2d 920, 935 (1983). In *State v. Harding*, 137 Ariz. 278, 295–96, 670 P.2d 383, 400–01 (1983), a case with the same defendant as in the instant case, and a case with facts strikingly similar to the instant case, we found imposition of the death penalty was not disproportionate to similar cases. In *Harding* we considered *State v. Gretzler*, 135 Ariz. 42, 659 P.2d 1, *cert. denied*, —— U.S. ——, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983); *State v. Raymond Tison*, 129 Ariz. 546, 633 P.2d 355, *cert. denied*, 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982); *State v. Ricky Tison*, 129 Ariz. 526, 633 P.2d 335 (1981), *cert. denied*, 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982); *State v. Gerlaugh*, 135 Ariz. 89, 659 P.2d 642 (1983), supplementing 134 Ariz. 164, 654 P.2d 800 (1982). We have considered those cases in the present situation also.

In addition, we have examined *State v. Schad*, 129 Ariz. 557, 633 P.2d 366 (1981), *cert. denied*, 455 U.S. 983, 102 S.Ct. 1492, 71 L.Ed.2d 693 (1982), and *State v. Arnett*, 119 Ariz. 38, 579 P.2d 542 (1978). In *Schad*, the defendant strangled an elderly man, dumped the body by the side of a road, and stole the victim's cash, credit cards, and automobile. We affirmed impo-

**502**

sition of the death penalty upon finding two aggravating circumstances; those two circumstances were the same as two of the four present in the instant case: A.R.S. § 13–454(E)(1) and (2) (currently A.R.S. § 13–703(F)(1) and (2) (the defendant has been convicted of a prior crime for which a sentence of life imprisonment or death was imposable in Arizona; and the defendant has been convicted of a prior crime including the use or threat of violence on another person)).

In *State v. Arnett, supra,* defendant was sleeping at a construction site. The victim arrived at the site in his truck camper and also slept at the site. The next morning, defendant tried to make a deal with victim for some food or a ride. Victim showed an interest in trading food for jewelry. Victim then followed defendant to a shack where the jewelry supposedly was located. Defendant testified he intended to steal victim's truck. At the shack, defendant grabbed his rifle and shot victim five times, killing him. We upheld the death sentence, despite numerous alleged mitigating circumstances, upon finding the same two aggravating circumstances present in *Schad* and in the instant case: A.R.S. § 13–703(F)(1) and (2).

The circumstances of the present case are more analogous to *Harding, Schad* and *Arnett* than cases in which we have reduced the sentence imposed to life imprisonment, as we did in *State v. McDaniel,* 136 Ariz. 188, 665 P.2d 70 (1983) (we found as a sufficiently substantial mitigating circumstance significant evidence that defendant and his accomplice did not intend to kill the victim) and in *State v. Valencia,* 132 Ariz. 248, 645 P.2d 239 (1982) (age of defendant at time of offense, 16, a significant mitigating factor).

 As required by A.R.S. § 13–4035, we have reviewed the record for fundamental error. Having found none, the judgments of conviction and sentences are affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and CAMERON and FELDMAN, JJ., concur.