703 P.2d 482

**STATE of Arizona, Appellee,**

v.

**Murray HOOPER, Appellant,**

No. 5810.

Supreme Court of Arizona, En Banc.

June 10, 1985.

---

Robert K. Corbin, Atty. Gen., William J. Schafer, III, Chief Counsel, Crim. Div., Gerald R. Grant, Asst. Atty. Gen., Phoenix, for appellee.

H. Allen Gerhardt, Jr., Mesa, Ross P. Lee, Maricopa County Public Defender, Phoenix, for appellant.

GORDON, Vice Chief Justice:

On December 24, 1982 a jury found defendant, Murray Hooper, guilty of one count of conspiracy to commit first degree murder, two counts of first degree murder, one count of attempted first degree murder, three counts of kidnapping, three counts of armed robbery, and one count of first degree burglary.

Defendant was subsequently sentenced to death for each count of first degree murder, to life imprisonment for conspiracy to commit first degree murder, and to approximately 140 years for the other crimes. This Court has jurisdiction under Ariz. Const. art. 6, § 5 (3) and A.R.S. § 13–4031. We affirm the convictions and sentences.

Defendant was tried jointly with William Bracy. The facts in Hooper's case are identical to those in *State v. Bracy*, 145 Ariz. 520, 703 P.2d 464 (1985), and they need not be repeated here.

Furthermore, with the few exceptions discussed below, Hooper raises the same issues as does Bracy. As we have disposed of these issues in Bracy's case, we need not

consider them again except to say that we find no reversible error.

**RESTRAINING OF DEFENDANT**

Defendant argues that the trial court committed reversible error in requiring him to be restrained during trial. Fearing the jury would see the shackles, defendant chose to waive his presence during jury voir dire. He maintains that the trial court's actions denied him his right to be present under Ariz. Const. art. 2, § 24.

■ Whether a defendant will be shackled is within the sound discretion of the trial court. *State v. Stewart*, 139 Ariz. 50, 676 P.2d 1108 (1984); *State v. Reid*, 114 Ariz. 16, 559 P.2d 136 (1976). Further when a defendant objects to being shackled during trial, there must be support in the record for the trial court's decision. *State v. Stewart, supra.*

■ The trial court did not abuse its discretion in ordering defendant shackled. The record revealed that defendant was under three death sentences in Illinois arising from the same triple murder for which defendant Bracy received death sentences in Illinois. Though Hooper, unlike Bracy, had no prior escape convictions, the mere absence of escape convictions does not mean a defendant must be free of restraints during a trial. Escape convictions are one factor a trial court may consider along with prior felony convictions for crimes of violence. *State v. Stewart, supra; State v. Johnson*, 122 Ariz. 260, 594 P.2d 514 (1979).

■ In the instant case, the trial court took extensive precautions to assure defendant's restraints would not be visible to the jury. *See State v. McMurtrey*, 136 Ariz. 93, 664 P.2d 637, *cert. denied,* ——— U.S. ———, 104 S.Ct. 180, 78 L.Ed.2d 161 (1983) (appellate court will not find error on ground that defendant shackled unless it is shown jury saw shackles). In view of defendant's background, we do not think the trial court abused its discretion in ordering defendant to wear restraints the jury could not see. Thus, as defendant was properly restrained, he was not denied his right to

**544**

be present when he voluntarily chose to be absent during voir dire.

## PRETRIAL IDENTIFICATION

■ Defendant next submits that the trial court committed reversible error in determining that the pre-trial identification of defendant by Marilyn Redmond was not unduly suggestive under *State v. Dessureault,* 104 Ariz. 380, 453 P.2d 951 (1969), *cert. denied,* 397 U.S. 965, 90 S.Ct. 1000, 25 L.Ed.2d 257 (1970). The fairness and reliability of a challenged identification are preliminary matters for the trial court whose findings will not be overturned on appeal absent a showing of clear and manifest error. *State v. Schilleman,* 125 Ariz. 294, 609 P.2d 564 (1980); *State v. McGill,* 119 Ariz. 329, 580 P.2d 1183 (1978). We find no abuse of discretion.

■ First, the lineup was not suggestive. Nothing in the lineup singles out defendant. Although some age disparity exists among the participants, this difference is not so great as to be suggestive. In addition, while all the participants are not the same height, the height difference is not extraordinary among any of the participants. The difference certainly does not single out defendant. Moreover that defendant was the only person in the lineup with his shirt tail untucked is in no way suggestive. Other lineup participants had unique items of clothing. Thus, this lineup was not suggestive. *See State v. Dessureault, supra.*

■ Furthermore, even if the lineup procedure was unduly suggestive, it was nonetheless admissible if the witness' identification was reliable. *Manson v. Braithwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *State v. McCall,* 139 Ariz. 147, 677 P.2d 920, *cert. denied,* —— U.S. ——, 104 S.Ct. 2670, 81 L.Ed.2d 375 (1983). Reliability is determined by considering the factors set out in *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). *See State v. Bracy, supra* (factors listed). Applying these factors, we find the pretrial identification reliable.

First, Mrs. Redmond had ample opportunity to observe defendant at the time of the crime. She first saw defendant in the well-lighted bedroom after Bracy had led her there. Defendant spoke to her, asking if there were any guns in the house, and he grabbed her and led her down a hallway to where the guns were kept. The hallway was also well lighted and defendant's face was no more than a foot away from Mrs. Redmond's face.

Second, Mrs. Redmond had a high level of attention. Though frightened to a certain degree, Mrs. Redmond said she was paying attention to the faces of all three intruders in her house. She was not just a casual observer of defendant, but rather her attention was focused on the suspect. *See State v. Ware,* 113 Ariz. 337, 554 P.2d 1264 (1976).

The accuracy of Mrs. Redmond's description was hotly contested at trial, with the defense arguing that Mrs. Redmond's first description of her assailants indicated that three black men, two of whom were masked, were the murderers. Regarding the reference to three black males, we believe the evidence shows that, at the scene, Mrs. Redmond initially said that all three men were black but that she corrected herself, saying, "no, one was white." The record supports the inference that this discrepancy was caused by difficulties Mrs. Redmond had in communicating immediately following the gunshot wound to her head.

Concerning the masks, it appears by some accounts that Mrs. Redmond initially stated that one or two of the assailants wore masks. Other testimony, however, indicated that Mrs. Redmond never mentioned masks immediately following the crime. Mrs. Redmond herself never recalled mentioning masks, and her testimony indicated that none of the intruders had masks on. Her other initial descriptions of the two black men were not particularly detailed. Examining the totality of the circumstances regarding this factor, we do not find the discrepancies in the description to be *per se* unreliable.

Mrs. Redmond exhibited a high level of certainty at the time of the pre-trial confrontation. After having viewed Bracy's lineup for the first time, Mrs. Redmond re-entered the viewing room and viewed Hooper's lineup. She then left the room, went to another office, and stated that she was positive the person occupying the third spot in the lineup, defendant, was the assailant. Her level of certainty is highly indicative of reliability.

■■■ Mrs. Redmond's identification of defendant came fifty-three days after the crime. Whether the length of time between the crime and the pretrial identification is too long depends upon the facts of each case; there is no *per se* rule. *See State v. Strickland,* 113 Ariz. 445, 556 P.2d 320 (1976) (ten days too long where witness saw attacker for very brief moment and at a point in time where she had no discernible interest in remembering what perpetrator looked like); *State v. McCall, supra* (fourteen days not too long where victim had ample opportunity to observe attacker at time of crime and where victim gave detailed description of attacker). In the instant case, in light of Mrs. Redmond's ample opportunity to observe defendant at the time of the crime, her high level of attention at the time of the crime, and her good level of certainty at the lineup, Mrs. Redmond's identification of defendant fifty-three days after the crime was not unreliable.

Based upon the foregoing factors, we find no error in admitting evidence of Mrs. Redmond's pretrial identification of defendant.

## ALLEGED DENIAL OF DEFENDANT'S RIGHT TO BE PRESENT

Defendant next argues that he was denied his constitutional right to be present when the trial court entered an ex parte order in regard to the trial.

■■ Though under both the Federal and Arizona constitutions a defendant has a right to be present at every stage of his trial, this right applies only to those proceedings in open court where his presence

has a reasonably substantial relation to the fullness of his opportunity to defend against the charge. *State v. Christensen,* 129 Ariz. 32, 628 P.2d 580 (1981).

■■ In the instant case, the trial court entered an order allowing witnesses subject to the rule of exclusion in defendant's trial to speak with a special prosecutor regarding contempt proceedings against Mr. Brownlee, Mr. Jones and Mr. Ryan. Defendant failed to object to this order at trial and now fails to cite any authority for his argument that he had a right to be present when the trial court made the order. In this instance, we find defendant had no constitutional right to be present when the trial court made this order.

## IMPEACHMENT OF A DEFENSE WITNESS

Defendant argues that reversible error occurred when the prosecution impeached a defense witness with a prior conviction and by showing the witness used an alias.

Prior to calling the witness to the stand, defendant moved to exclude evidence of the witnesses' 1964 manslaughter conviction. The trial judge granted this motion. It was also revealed that the witness had numerous other prior convictions, none of which defendant moved to exclude. On cross-examination the prosecution asked the witness if he had any prior felony convictions, to which he answered yes. Defendant immediately objected, and the trial court instructed the prosecution to frame its question so that the 1964 conviction would not surface. Without objection, the prosecution then elicited from the witness that he had been convicted of possession of heroin in 1977. Defendant also asked the witness several questions about the prior conviction on redirect.

■■■ Thus, as defendant failed to object to admission of the 1977 conviction, he has waived the issue on appeal absent fundamental error. *State v. Nash,* 143 Ariz. 392, 694 P.2d 222 (1985); *State v. Vickers,* 129 Ariz. 506, 633 P.2d 315 (1980). No fundamental error occurred. The record

indicates that the 1977 conviction was a felony conviction, admissible to impeach a witness' credibility. Rule 609, Ariz.R. Evid., 17A A.R.S..

■■■■■ Defendant next complains that it was reversible error to allow the state to attack the witness' credibility with his use of an alias. Again, defendant made no objection to this impeachment, and the issue is waived absent fundamental error. *State v. Vickers, supra.* There was no fundamental error. The case defendant cites is inapplicable, and nothing indicates it is error to impeach a defense witness by showing his use of an alias.

## LIMITATION OF DR. LOFTUS' TESTIMONY

Dr. Elizabeth Loftus, a leading expert on perception, memory retention, and recall, was called to testify regarding the weaknesses of eyewitness testimony. The trial court, however, ruled that Dr. Loftus' testimony would be limited to the area of cross-racial identification. Dr. Loftus then testified before the jury. Defendant, citing *State v. Chapple*, 135 Ariz. 281, 660 P.2d 1208 (1983), maintains that the trial court's limitation upon Dr. Loftus' testimony was reversible error.[1]

We need not decide whether the trial court erred in limiting Dr. Loftus' testimony because we decline to apply *Chapple* retroactively. The trial in the instant case began in late October of 1982, and the verdicts were returned on December 24, 1982. *Chapple* was decided on January 11, 1983.

■■■■■ The Constitution allows us to apply judicial rulings either prospectively or retroactively. State ex rel. *Collins v. Superior Court*, 132 Ariz. 180, 644 P.2d 1266 (1982). In making this decision we should examine (1) the purpose of the new rule, (2) the extent of reliance on the old rule, and (3) the effect on the administra-

tion of justice of a retroactive application of the new standards. *Brown v. Louisiana*, 447 U.S. 323, 100 S.Ct. 2214, 65 L.Ed.2d 159 (1980); *State ex. rel. Collins, supra.*

■■■■■ The purpose of the rule announced in *Chapple* was narrow. That is, in certain extraordinary cases, expert testimony is admissible to generally explain the deficiencies of eyewitness testimony. Though the *Chapple* rule has some bearing on the truth-finding process, *see State v. Stenrud*, 113 Ariz. 327, 553 P.2d 1201 (1976), additional safeguards present during trial minimize the possibility of a miscarriage of justice.

The extent of reliance on the old rule was great. As we found in *State v. Chapple, supra*, the great majority of cases considering the admissibility of expert testimony regarding eye witness examination had held it inadmissible. Trial courts had undoubtedly relied upon this weighty authority in limiting or excluding expert testimony regarding eyewitness identification.

Finally, we believe retroactive application of the *Chapple* rule would have an undesirable effect upon the administration of justice. In deciding whether to apply a new constitutional rule retroactively we have stated:

> "We are reluctant to apply a constitutional rule of criminal procedure retroactively as '[t]o characterize a past proceeding as unconstitutional and therefore void reflects seriously on the integrity of the law, * * * weakens the confidence of those who trusted in the existence and validity of the rule and undermines the doctrine of the finality of prior determinations.' *State v. Ray*, 114 Ariz. 380, 383, 560 P.2d 1287, 1290 (1977) (quoting in part *State v. Smith*, 112 Ariz. 321, 541 P.2d 918 (1975). See *Linkletter supra.*"

*State ex. rel. Collins v. Superior Court*, 132 Ariz. at 190, 644 P.2d at 1276.

---

**1.** In *State v. Chapple, supra,* we held that under the peculiar facts of that case, it was error to entirely foreclose Dr. Loftus' expert testimony on eyewitness identification. That error, in combination with the error in admitting an inflammatory photograph, constituted reversible error.

The same considerations apply to new non-constitutional rules, such as that announced in *Chapple*. It is possible that juries have convicted defendants in trials where testimony similar to that in question was limited or excluded.

"But the law is dynamic. It is a continuum of succeeding redefinitions. Not every refinement in the law should call into question all prior convictions. Justice does not demand judicial reexamination of all criminal trials for each new advancement in judicial thinking. The judiciary could not function if there was never any finality to decisions. It is for this reason that only where there is a denial of a basic right of constitutional magnitude that is correctable will retrospective application be invoked. This is not the case here."

*State ex rel. Collins v. Superior Court,* 132 Ariz. at 190, 644 P.2d at 1276.

For the above reasons, we will apply the *Chapple* rule prospectively only. Thus as *Chapple* was decided on January 11, 1983, it applies to any trial beginning on or after that date. Further, if a trial was ongoing when *Chapple* was decided and the record reveals that applying *Chapple* to the trial would not have unreasonably disrupted the administration of the trial, we will apply the *Chapple* rule to such a case. Obviously, such a determination depends on the particular facts of each case. This Court recognizes that its holding is not entirely prospective, but we have the discretion to decide the most equitable time to make new rules applicable. *State ex rel. Collins v. Superior Court, supra.*

## PROSECUTOR'S COMMENTS IN CLOSING ARGUMENT

Defendant next argues that the prosecutor's final rebuttal argument contained impermissible references to defendant's failure to testify. The prosecutor stated:

"[MR. BROWNLEE:] In conclusion, this case deals with greed, it deals with power, it deals with money, all the things which are superior in and supreme to human life. The state also seeks justice, not by sympathy, but by evidence. You

heard the evidence. You know what it is. You know what kind of justice on New Year's Eve Patrick Redmond, Helen Phelps and Marilyn Redmond had. They had no jury. They had a limited right to speak—

"MR. REMPE: Your Honor, would you note my objection as to that?

"THE COURT: Yeah. Mr. Brownlee is reminded also.

"MR. BROWNLEE: I'm referring to—

"THE COURT: Mr. Brownlee, you hear what I said?

"MR. BROWNLEE: Certainly.

"THE COURT: Okay.

"MR. BROWNLEE: Mrs. Redmond told you what happened there. You have heard it called a tragedy. A tragedy is an avalanche, a snowfall, an earthquake. It's not something planned. It was planned. It was intentional. It was brutal.

"You have the evidence, you have a duty. You have a duty to stand up and speak individually for the victims that evening. Mrs. Phelps risked her life when she tried to protect something sacred, her wedding ring, and yet she was forced to give it up just as she was forced to give up her life.

"There is no doubt in this case. You heard about reasonable doubt. Is there a reason to acquit these two gentlemen? There is not. There is no reason. They are guilty beyond a reasonable doubt of each of those offenses. We ask you to find them guilty as charged. Thank you."

■ The fifth amendment's prohibition against self-incrimination prohibits prosecution arguments that a defendant's failure to testify supports an unfavorable inference against him. *Lakeside v. Oregon,* 435 U.S. 333, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978); *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *State v. Fuller,* 143 Ariz. 571, 694 P.2d 1185 (1985). Such conduct also violates a state statute, A.R.S. § 13–117(B), which has been raised to the level of a constitutional guarantee. *State v. Fuller, supra.*

■ Thus, under both Arizona and Federal law, an impermissible comment upon a defendant's invocation of his right not to testify occurs when "the language used was manifestly intended or was of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify." *United States v. Soulard*, 730 F.2d 1292, 1306 (9th Cir.1984); *State v. Fuller, supra.*

■ We find no violation of defendant's fifth amendment rights because we do not think the language was manifestly intended or was of such a character that the jury would naturally and necessarily take it to be a comment on the defendant's failure to testify.

## JURY MISCONDUCT

Defendant next alleges that a pre-deliberations meeting of the jurors constituted juror misconduct and warrants a new trial.

■ On December 21, 1982, the trial court selected four alternates from the sixteen member jury panel. The twelve remaining jurors then selected a foreman. Following their selection, but prior to the beginning of any deliberations, the jurors were dismissed for the evening. After dismissal, two of the final twelve jurors met at a bar with two alternate jurors, where all four discussed how the jury foreman was selected and how the alternates were chosen. No evidence was presented showing the jurors discussed the merits of the case. Though disapproving of the conduct, the trial court did not believe the jurors' actions prejudiced defendant, and the motion for new trial was denied. We will not reverse this decision absent an abuse of discretion. *State v. Vasquez*, 130 Ariz. 103, 634 P.2d 391 (1981).

■ Defendants have an undisputed right to a unanimous verdict by a properly constituted jury, unaided by outside influences such as alternate jurors who have been excused by the court. *State v. Rocco*, 119 Ariz. 27, 579 P.2d 65 (App.1978). Thus, if alternate jurors aid the jury that is finally picked in its deliberations, prejudice nec-

essarily results and a new trial is warranted. *Id.*

■ In the instant case, we find no abuse of discretion. First, the alternate jurors did not discuss the merits of the case with the members of the final twelve. Second, these discussions occurred prior to the beginning of actual deliberations. Thus, we do not believe any prejudice resulted to defendant. *See State v. Poland*, 132 Ariz. 269, 645 P.2d 784 (1982) (finding of prejudice necessary to reverse case for juror misconduct); *see also State v. Rocco, supra* (no prejudice shown where alternate juror prayed with final jury panel in jury room for one minute prior to beginning of deliberations).

## PROPOSED WITHDRAWAL OF WAIVER OF JURY TRIAL ON PRIOR CONVICTIONS

Defendant next argues that he unknowingly waived his right to a jury trial on prior convictions and that, therefore, he should be resentenced on counts IV through IX.

The record belies this argument. Immediately after the verdicts were returned in this case, the trial court arraigned defendant and Bracy on the prior conviction allegations. Defendant was present with counsel when the trial court explained the rights attendant to a jury trial on prior convictions to defendant Bracy. Defendant Hooper then stated he was willing to waive a jury trial on the issue of priors. Defendant never objected to this procedure. Two weeks later, defendant moved to withdraw his waiver, stating that he did not understand the consequences of a waiver.

■ The trial court properly denied defendant's motion to withdraw the waiver. First, the waiver was voluntary. Defendant admitted that no force or threats were used against him to extract the waiver. Further, the trial judge fully explained the rights attendant to a jury trial. Though the court never explained that a finding of priors would enhance punishment, such information was irrelevant to defendant's de-

cision. The effect of a waiver of the jury trial was only that the trial court and not the jury would determine the matter; waiver has no effect on enhancement. The trial court provided defendant with sufficient information with which to make an intelligent waiver. *See State v. Butrick*, 113 Ariz. 563, 558 P.2d 908 (1976).

██ Second, the trial court did not abuse its discretion in not allowing a withdrawal pursuant to Rule 18.1(b)(3), Ariz.R. Crim.P., 17 A.R.S., which allows the trial judge, at his discretion, to withdraw a jury trial waiver before the taking of evidence. Defendant cites nothing justifying withdrawal of the waiver. Indeed, as the jury had been dismissed for two weeks, there was every reason to deny the withdrawal. *See State v. Crumley*, 128 Ariz. 302, 625 P.2d 891 (1981).

**PROOF OF PRIOR CONVICTIONS**

██ Defendant next argues that the trial court committed several errors in the admission of evidence during the trial on prior convictions. The admission of evidence is within the discretion of the trial court whose rulings will not be disturbed on appeal absent an abuse of that discretion. *State v. Macumber*, 119 Ariz. 516, 582 P.2d 162 (1978).

██ Defendant argues that the trial court erred in admitting hearsay evidence. Cook County Prosecutor Greg Owen testified that he prosecuted defendant in Illinois and received jury verdicts of guilt. Defendant maintains that testimony regarding the actions of the Illinois jury is inadmissible hearsay. We agree. The Illinois jury verdict was certainly an out of court statement offered to prove what it asserts—that defendant was found guilty and convicted of various crimes. We can further discern no hearsay exceptions applying to such testimony. The trial court abused its discretion in admitting this evidence. *See* Rules 801–803, Ariz.R.Evid., 17A A.R.S. In addition, we find the trial court erred in admitting photostatic copies of the jury forms from the Illinois trial. These forms were inadmissible hearsay and

were not authenticated in any manner. Lastly, we question the relevance of evidence in a prior conviction trial that a jury returned guilty verdicts against the defendant in a past case. A jury verdict of guilt is not a conviction; only the trial court can enter a judgment of conviction.

██ Because we find that other admissible evidence establishes defendant's prior convictions, however, we find the errors harmless. *See State v. Jeffers*, 135 Ariz. 404, 661 P.2d 1105, *cert. denied*, ── U.S. ──, 104 S.Ct. 199, 78 L.Ed.2d 174 (1983); *State v. Williams*, 133 Ariz. 220, 650 P.2d 1202 (1982). First, we reject defendant's claim that the documents showing his prior convictions were simply "abstracts" of records instead of an actual copy of a record as required by Rule 902(4), Ariz.R.Evidence, 17A A.R.S. We have reviewed the record in question and believe it to qualify as a self authenticating document under Rule 902. We also reject defendant's claim that the certifications lacked trustworthiness because a judge from Cook County signed the certification "under seal" yet no seal appeared next to his name. Rule 902(2) provides that a document can be self-authenticating if a public officer without seal signs the document so long as "a public officer having a seal and having official duties in the district or political subdivision of the officer or employee certified under seal that the signer has the official capacity and that the signature is genuine." In the instant case, the Clerk of the Circuit Court of Cook County, Illinois did exactly what Rule 902(2) describes. Finally, we reject defendant's arguments that admitting the record violated his confrontation rights. *See Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970).

██ Thus, the admissible evidence showed that there was in fact a prior conviction. Further, the testimony of Greg Owen established that the defendant in the present case and the one convicted in the prior case are the same individual. The state, therefore, proved both elements

needed to show prior convictions. *State v. Pennye*, 102 Ariz. 207, 427 P.2d 525 (1967).

## PROPER ALLEGATION THAT DEFENDANT WAS A DANGEROUS, REPETITIVE OFFENDER

Defendant next argues that the state's allegations of prior convictions did not allege that defendant's prior convictions were dangerous. Further, defendant states that the trial court's finding of prior convictions did not contain a finding that the prior convictions were dangerous. Thus, defendant argues, resentencing is warranted on Counts IV through XI.

 This argument is meritless. First, the state's allegation of prior convictions cites A.R.S. § 13–604, defining dangerous and repetitive offenders. Second, the allegations list three counts of first degree murder, three counts of armed robbery, and three counts of aggravated kidnapping, all of which are dangerous on their face. This allegation gave defendant notice that the state was alleging dangerous prior convictions.

 Defendant correctly states that, initially, the trial court did not specifically find the dangerousness of the prior convictions. Defendant, however, already had sufficient notice of the allegation of dangerousness. Further, the crimes were obviously dangerous, thus making the lack of a specific finding harmless. Moreover, when presented with the question, the court found that the priors were indeed dangerous. We find no error.

## DEATH PENALTY ISSUES

We have disposed of all of the constitutional arguments raised by defendant in *State v. Bracy, supra.* Now, therefore, we independently review the record determining the existence and weight of aggravating circumstances and the propriety of the sentence. *State v. Nash*, 143 Ariz. 392, 694 P.2d 222 (1985).

In imposing the death sentence, the trial court found five aggravating circumstances, A.R.S. § 13–703(F)(1), –703(F)(2), –703(F)(3), –703(F)(5), and –703(F)(6).

 We find the existence of A.R.S. § 13–703(F)(1), that "defendant has been convicted of another offense in the United States for which under Arizona law a sentence of life imprisonment or death was imposable." On September 23, 1981 a judgment of conviction was entered against defendant in Cook County, Illinois for three counts of first degree murder. He received the death sentence for each count and could have received the same in Arizona.

 We also find the existence of A.R.S. § 13–703(F)(2) that "defendant was previously convicted of a felony in the United States involving the use or threat of violence on another person." On September 23, 1981 judgment was entered against defendant in Cook County, Illinois on three counts of armed robbery and three counts of aggravated kidnapping. We take judicial notice that all these crimes involve the use or threat of violence against others. *See State v. Nash, supra.*

For the reasons stated in *State v. Bracy, supra*, we do not find A.R.S. § 13–703(F)(3) to exist.

 We find the existence of A.R.S. § 13–703(F)(5), that "defendant committed the offense as consideration for the receipt or in expectation of the receipt of anything of pecuniary value". Arnold Merrill testified that Robert Cruz gave William Bracy a stack of $100 bills, apparently as prepayment for the murders. Bracy gave some of this money to Hooper. Nina Marie Louie testified that McCall told her the murders were contract killings. In addition, Nina Marie Louie testified that, shortly before the murders, all three assailants were armed with guns, and they were talking about coming into large amounts of money and doing an important job. Moreover, the evidence established that defendant was part of Cruz' crime organization and that he was Bracy's associate. It can be inferred that he stood to gain monetarily from payments to Bracy. This evidence

is sufficient to establish that defendant was a hired murderer to whom A.R.S. § 13–703(F)(5) indisputably applies. *State v. Bracy, supra; State v. McCall, supra.*

For the reasons stated in *State v. Bracy, supra,* we find the defendant committed the offense in an especially heinous, cruel, or depraved manner, A.R.S. § 13–703(F)(6).

█ The trial court also considered all possible mitigating circumstances and found none to exist. We agree. At the sentencing hearing, defendant's counsel argued as a mitigating circumstance that the death penalty was immoral. Defendant's opposition to the death penalty, however, is not a mitigating circumstance sufficiently substantial to outweigh the aggravating circumstances. Reviewing the record, we find no other mitigating circumstances.

█ In addition, we have reviewed this case in light of *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) and find imposition of the death penalty proper. Though defendant had accomplices, the record contains sufficient evidence that defendant killed, attempted to kill, or intended to kill.

## PROPORTIONALITY REVIEW

█ Lastly, this court examines prior cases to "determine whether the sentences of death are excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." *State v. Nash, supra,* 143 Ariz. at 406, 694 P.2d at 236. Having examined other cases in which the defendant received the death penalty based on one or more of the aggravating circumstances found here, we find imposition of the death penalty not disproportionate. *See State v. Harding,* 141 Ariz. 492, 687 P.2d 1247 (1984); *State v. Fisher,* 141 Ariz. 227, 686 P.2d 750, *cert. denied,* —— U.S. ——, 105 S.Ct. 548, 85 L.Ed.2d 436 (1984); *State v. McCall, supra; State v. Adamson,* 136 Ariz. 250, 665 P.2d 972 (1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 204, 78 L.Ed.2d 178 (1983); *State v. Woratzeck,* 134 Ariz. 452, 657 P.2d 865 (1982).

We have also examined cases in which the death penalty was reduced to life imprisonment. *See e.g., State v. Graham,* 135 Ariz. 209, 660 P.2d 460 (1983); *State v. Valencia,* 132 Ariz. 248, 645 P.2d 239 (1982). We believe imposition of the death penalty is justified.

Pursuant to A.R.S. § 13–4035 we have examined the entire record for fundamental error and have found none. The judgment of conviction and the sentences are affirmed.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ.