(No. 76068.—

## THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. MURRAY HOOPER, Appellant.

*Opinion filed January 25, 1996.—Rehearing denied June 3, 1996.*

Rita A. Fry, Public Defender, of Chicago (Raymond H.R. Silvertrust, Assistant Public Defender, of counsel), for appellant.

James E. Ryan, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Arleen C. Anderson, Assistant Attorney General, of Chicago, and Renee Goldfarb and Sari L. London, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARRISON delivered the opinion of the court:

Pursuant to Supreme Court Rule 603 (134 Ill. 2d R. 603), the defendant, Murray Hooper, appeals the sentence of death imposed by the circuit court of Cook County after a jury found that there are no mitigating factors sufficient to preclude its imposition. He presents 16 issues for our review. We affirm.

The defendant was indicted together with Roger Collins and William Bracey for the armed robbery (Ill. Rev. Stat. 1979, ch. 38, par. 18—2), aggravated kidnapping (Ill. Rev. Stat. 1979, ch. 38, par. 10—2(a)(3)), and murder (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(a)(1)) of Frederick Lacey, R.C. Pettigrew, and Richard Holliman committed on November 12, 1980, in Chicago. Collins and Bracey were tried separately, convicted, and sentenced to death; this court affirmed their convictions and sentences.

(*People v. Collins* (1985), 106 Ill. 2d 237.) A jury found
defendant Hooper guilty of each offense on August 24,
1981, and found that there were no factors in mitigation
sufficient to preclude the imposition of the death
sentence on the murder convictions. Accordingly, the
circuit court sentenced him to death on the three mur-
der convictions. It sentenced him as well to concurrent
terms of 60 years on each of the three convictions of
armed robbery and 60 years on each of the three convic-
tions of aggravated kidnapping. On review (*People v.
Hooper* (1989), 133 Ill. 2d 469) this court affirmed that
part of the judgment entered on defendant's convictions
for first degree murder, robbery, and aggravated kidnap-
ping as well as the sentence imposed on each of the
convictions of armed robbery. It amended the sentence
imposed on each of the convictions of aggravated kidnap-
ping by reducing each sentence to 15 years. Because of
improper arguments by the prosecutor at the second
phase of the death penalty hearing, this court vacated
the death sentence and remanded the cause to the
circuit court for a new sentencing hearing and imposi-
tion of sentence on the convictions of murder. Upon
remand, on June 18, 1993, as we have indicated, a jury
found again that there are no mitigating factors suf-
ficient to preclude the imposition of the death sentence,
and on July 16, 1993, the circuit court denied defendant's
motion for a new sentencing hearing and sentenced him
to death. Because a full summary of the evidence admit-
ted at defendant's trial appears in our opinion remand-
ing the cause for a new sentencing hearing, we state
here only those facts necessary to the disposition of this
appeal following remand.

After the defendant was convicted of the murders of
Lacey, Pettigrew, and Holliman and was first sentenced
to death but before another sentencing hearing was
conducted on remand, the defendant was convicted, on

December 24, 1982, of the murders of William Redmond and Helen Phelps and the attempted murder of Marilyn Redmond, which were committed at the Redmonds' home in Phoenix, Arizona, on December 31, 1980.

Defendant contends that numerous errors committed during both the eligibility and the penalty phases of his sentencing hearing upon remand deprived him of the right to a fair sentencing hearing. We turn first to those he cites that are associated with the eligibility phase.

In the first issue defendant raises for review, which embraces seven subissues, he maintains essentially that the permissible scope of inquiry during the eligibility phase of the sentencing hearing was exceeded not only by certain remarks of the prosecutor made during opening statement and closing argument but also by the admission of certain evidence. Defendant seems to make two principal overarching arguments concerning these errors. With respect to the three murders committed in Illinois, defendant claims that it was unnecessary for the State to have introduced any evidence about or to have made any comments concerning the manner in which they were committed because, to show defendant's eligibility for the death penalty, the State needed to produce only the convictions for these three murders and, of course, evidence that he had attained the age of 18 at the time they were committed. With respect to the two murders committed in Arizona, defendant contends that no evidence about them at all should have been admitted because, among other reasons, defendant's eligibility for the death penalty was shown by means of his convictions for the three murders committed in Illinois. He urges that any evidence at all pertaining to the two murders committed in Arizona as well as all evidence beyond proof of his convictions of the three murders in Illinois was introduced by the State solely to inflame the

jury. Initially we will consider his claims concerning the three murders committed in Illinois; thereafter we will address his contentions concerning the two murders committed in Arizona.

The statutory aggravating factor forming the basis of defendant's eligibility for the death penalty, set forth in section 9—1(b)(3) of the Criminal Code of 1961, is that

> "the defendant has been convicted of murdering two or more individuals under subsection (a) of this Section or under any law of the United States or of any state which is substantially similar to subsection (a) of this Section regardless of whether the deaths occurred as the result of the same act or of several related or unrelated acts so long as the deaths were the result of either an intent to kill more than one person or of separate acts which the defendant knew would cause death or create a strong probability of death or great bodily harm to the murdered individual or another." (720 ILCS 5/9—1(b)(3) (West 1992).)

Section 9—1(a) provides:

> "A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death:
>
> > (1) he either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or
> >
> > (2) he knows that such acts create a strong probability of death or great bodily harm to that individual or another; or
> >
> > (3) he is attempting or committing a forcible felony other than second degree murder." 720 ILCS 5/9—1(a) (West 1992).

Defendant points first to the following remark by the prosecutor during opening statement:

> "Ladies and gentlemen, like any trade, there's tools of the trade, and what you will see in this hearing is about the tools of this man's trade because he killed for profit, he killed for money, and the tools of his trade were shotguns and handguns, the tools of his trade were

restraints, ropes or cloth used to tie up victims, the method that he opted was to shoot people at point blank range so that there would be no witnesses. Ladies and gentlemen, as these five dead bodies will attest, Murray Hooper was good at his trade."

In defendant's view this remark exceeded the scope of the eligibility phase and was not only irrelevant but also inflammatory and, thus, improper. In the same vein, defendant contends that it was error to permit one of the police officers who investigated the three murders in Chicago to testify at length about the crime scene as he found it and the wounds of the victims and to state that rope recovered from a search of defendant's apartment matched that found on the wrists of victim Pettigrew. For the same reason defendant maintains that it was error to allow witnesses to testify about morgue photographs of the three victims in Illinois and that in closing argument the prosecutor dwelt primarily upon the nature of the wounds the victims received rather than the issue of whether defendant was eligible for the death penalty.

The State argues, relying upon *People v. Edgeston* (1993), 157 Ill. 2d 201, that the evidence presented was necessary and the remarks made were proper to prove the statutory aggravating factor of two or more convictions of murder. The jury that was empaneled at the sentencing hearing upon remand was unacquainted with the evidence adduced at trial. In order to establish defendant's eligibility for the death sentence, the State was obliged to establish that the defendant was possessed of the requisite mental state in the commission of the five murders of which he was convicted. Thus, the State urges, the remarks and evidence were proper because they were relevant to show that the deaths were the result of either an intent to kill more than one person or of separate acts the defendant knew would cause death or create a strong probability of death or great bodily harm to the victim.

In *Edgeston* we reiterated the purpose of the first phase of a capital sentencing hearing: to allow a jury to determine the defendant's eligibility for the death penalty free from any potentially inflammatory evidence that might improperly influence this determination. Thus, only evidence bearing directly on the statutory prerequisites should be admitted. (*Edgeston*, 157 Ill. 2d at 224.) The decision whether to admit evidence at the first stage of a capital sentencing hearing is for the circuit court, whose decision will not be disturbed in the absence of an abuse of discretion. *Edgeston*, 157 Ill. 2d at 224.

In determining whether a defendant is eligible for the death penalty pursuant to section 9—1(b)(3) of the Criminal Code of 1961, the sentencing jury must consider whether defendant was convicted of murdering two or more individuals and whether the deaths were the result of either an intent to kill more than one person or of separate acts that the defendant knew would cause death or create a strong probability of death or great bodily harm to the victim. Therefore, the State must prove not only the defendant's conviction of two or more murders but also a culpable mental state at the time the murders were committed. (*Edgeston*, 157 Ill. 2d at 224.) Proof of a conviction of murder based upon a theory of accountability, standing alone, does not demonstrate the intent or knowledge necessary to show eligibility for the imposition of the death penalty under section 9—1(b)(3). (*Edgeston*, 157 Ill. 2d at 225.) As a consequence, it was incumbent upon the State at the eligibility phase of the defendant's capital sentencing hearing to demonstrate the intent or knowledge necessary pursuant to section 9—1(b)(3).

In his reply brief defendant acknowledges that *Edgeston* applies when guilt is established on the basis of a theory of accountability but argues that the

prosecutor's remarks served to inflame the jury rather than to inform it of his intent or knowledge. Although the record for review does not include either the transcript of proceedings of the guilt phase of defendant's trial in this cause or the instructions given to the jury at that time, it seems clear, and the defendant has so asserted, that he was tried under a theory of accountability. During oral argument before this court, defendant stated, "[I]n fact, the posture of the prosecution at his original trial was that defendant was accountable, that he wasn't necessarily a direct actor." In support of another issue in his brief, defendant points out that "the State admitted [during its opening statement at the eligibility phase of defendant's sentencing hearing upon remand] that defendant may only have been accountable." In opening statement at the eligibility phase of the sentencing hearing upon remand, the prosecutor said,

> "Ladies and gentlemen, what you will see also through this hearing is that the wounds that you see on these people, and the way that the case—the crime was carried out in both of these incidents will show you an intent to kill, will show that you [sic] they knew that their acts created a strong probability of death or great bodily harm, and the facts will also show you, ladies and gentlemen, although the defendant may not have been the trigger man as to each one of these murders, he is responsible under the law for his actions, for the actions of his cohorts in crime and [sic] the Chicago case, that being William Bracey and Roger Collins, Edward McCall, [sic] and William Bracey down in Phoenix, he is responsible for their actions as he is his own because he aided in the planning, in the commission of this offense."

Further, at the eligibility phase of the sentencing hearing upon remand the court instructed the jury concerning accountability, and the evidence adduced was consistent with such a theory. Our examination of the record reveals that the evidence and the remarks about it that

defendant complains of were probative of and relevant to the culpable mental state required to be shown by the State and cannot be said to have been introduced merely to inflame and to prejudice the jury against him. Hence, the circuit court did not abuse its discretion in admitting this evidence or permitting the prosecutor's remarks about it.

With respect to the evidence concerning the two first degree murders defendant committed in Arizona, he makes a number of arguments in support of his position that the admission of this evidence at the eligibility phase was prejudicial error. He argues, *inter alia*, as we have indicated above, that it was unnecessary at the eligibility phase to inform the jury that defendant had committed the murders in Arizona because "[t]he [S]tate was able to get a determination that [defendant] was eligible for murder [*sic*] in first trial based on the fact that he had been 18 at the time and had killed more than one person in Illinois." Defendant asserts, "[T]he copies of the first jury's verdicts or certified copies of the Illinois convictions alone provided the jury with sufficient evidence to address the narrow issue of whether [defendant] should have been eligible for the death penalty." Elsewhere in his brief defendant states that discussion of the murders committed in Arizona was "not necessary to showing a statutorily aggravating factor existed, namely[,] that defendant had been convicted of the murders of three individuals in Illinois." Essentially, defendant argues that any reference to the murders committed in Arizona is superfluous and prejudicial because his eligibility for the death penalty could have been shown on the basis of the three murders of which he was convicted in Illinois. He contends that the State's purpose in introducing such evidence was merely to inflame the jury and that its introduction violated the rule requiring strict procedural accuracy at the eligibility phase of a sentencing hearing.

A high standard of procedural accuracy is required when determining whether the death penalty will be imposed. (*People v. Davis* (1983), 97 Ill. 2d 1, 26-27.) During the first phase of the sentencing hearing, that is, the eligibility phase, the question for the jury to determine is whether, on the basis of a statutory aggravating factor, defendant is *eligible* to receive the death sentence, not whether, in light of his character or record, he *should* receive it. (*Davis*, 97 Ill. 2d at 26.) The possibility that the jury might have found the defendant eligible for the death penalty on the basis of an irrelevant and prejudicial nonstatutory aggravating factor should not be tolerated. (*Davis*, 97 Ill. 2d at 27.) Here, however, even if it were error to permit reference to the Arizona murders at the eligibility phase of the sentencing hearing, and we make no determination in that regard, such error could have been, at most, harmless beyond a reasonable doubt. Defendant has acknowledged his eligibility for the death penalty on the basis of the three murders of which he was convicted in Illinois so that the jury cannot be said to have found him eligible for this penalty on the basis of an irrelevant and prejudicial nonstatutory aggravating factor. Thus, defendant could have suffered no prejudice at the first, that is, the eligibility phase, of his sentencing hearing upon remand. Furthermore, he could have suffered no prejudice at the second, that is, the aggravation and mitigation phase, of his sentencing hearing upon remand because the evidence pertaining to the murders committed in Arizona about which he complains would have been admissible there, where the jury may consider any evidence that is shown by reliable testimony and is relevant in aggravation or mitigation (*Collins*, 106 Ill. 2d at 282). We note that at the aggravation and mitigation phase the jury was provided with the same 71 exhibits with which it had been provided during the eligibility phase, together

with 17 additional exhibits introduced at the second phase; although defendant renewed his objection at the second phase to the admission of the exhibits the jury had received at the first phase, particularly to those depicting injuries, which he characterized as highly inflammatory, on appeal he makes no challenge to their admission at the aggravation and mitigation phase. Defendant's assertions to the contrary notwithstanding, we are unable to discern any possible prejudice to him as a result of the admission of and reference to this evidence.

We have read the entire record and have examined defendant's other contentions of error with respect to the eligibility phase of his death sentencing hearing and find them to be without merit. We turn now to the issues he raises concerning the second, that is, the aggravation and mitigation, phase of the sentencing hearing.

With respect to the aggravation and mitigation phase of the sentencing hearing, defendant presents several issues for review, including his contention that the imposition of the death sentence in this case is excessive and inappropriate in light of his history and character and the fact that he has demonstrated an excellent adjustment to incarceration. Arguing correctly that "[o]ur legislature did not intend for every defendant who qualifies for the death penalty to receive it," defendant asks that his sentence be reduced to one of life imprisonment. The decision made at the second phase of a death penalty hearing, when factors in mitigation and in aggravation are considered, is a process of balancing in which evidence in aggravation is measured against that in mitigation, and the decision of a capital sentencing jury will not be overturned lightly, particularly where that decision is amply supported by the record. (*People v. Taylor* (1995), 166 Ill. 2d 414, 432.) Here

the jury at the sentencing hearing upon remand heard evidence in aggravation concerning five convictions of first degree murder, offenses committed by the defendant during a span of less than two months in November and December of 1980. The evidence defendant adduced in mitigation, consisting principally of the good behavior and positive attitude he has exhibited while incarcerated for the instant offenses, counterbalances but little the enormous weight of such evidence in aggravation. Furthermore, about this defendant, who was born November 22, 1945, the jury heard still more evidence in aggravation, including evidence of his convictions for attempted armed robbery committed in 1964, voluntary manslaughter committed in 1969, attempted murder committed in 1974, unlawful use of a weapon committed in 1978, and attempted murder committed in 1981. In light of the ample evidence in the record supporting the jury's decision that there are no mitigating factors sufficient to preclude the imposition of a sentence of death, we will not disturb it.

The defendant contends that the circuit court erred in refusing to admit as evidence in mitigation testimony of Morris Nellum, a witness for the State at defendant's first trial who through his testimony at that time placed defendant at the scene of the three murders in Illinois and implicated him as a participant. Defendant sought to have Morris Nellum testify in mitigation that the person at the scene of the crime whom he had identified at trial as defendant was not defendant. The circuit court granted the State's motion *in limine* precluding the introduction of this testimony because it constitutes evidence pertaining, not to mitigation, but to residual doubt.

Defendant contends that this testimony is relevant to mitigation because the State's theory of defendant's guilt at trial, although not at the sentencing hearing,

was accountability and that this testimony addresses defendant's role in the commission of the three murders. Defendant argues that this testimony

"showed that [he] was not a triggerman or a direct movant in any of the homicides. It was not testimony which said defendant was totally innocent or had nothing to do with the conspiracy to shoot the victims, rather it was testimony simply stating that Murray Hooper had not been present at the shooting and hence was not one of the shooters. As such, defendant had a right to present this testimony in mitigation."

In response to this argument as advanced by counsel at the sentencing hearing, the circuit court stated, "I heard his confession and it's more than accountability. He popped the guy in the back seat [of the automobile in and around which the bodies of the three victims were found]." According to the testimony of Officer O'Callaghan at the sentencing hearing, the defendant gave police two different accounts of having shot one of the three victims, claiming in the first of these two accounts that he had shot the person whose body was found by the front seat of the car, that is, Pettigrew, and in the second that he had shot the person whose body was found in the back seat of the car, that is, Holliman.

The death penalty statute in Illinois requires the jury to consider any aggravating and any mitigating factors that are relevant to the imposition of the death penalty. (*People v. McDonald* (1995), 168 Ill. 2d 420, 456.) Residual doubt is not relevant to the circumstances of the offense or to the defendant's character and, as a result, is not relevant to the imposition of the death penalty. (*McDonald*, 168 Ill. 2d at 456; see *Edgeston*, 157 Ill. 2d at 245; *People v. Fields* (1990), 135 Ill. 2d 18, 67.) We need not decide whether the circuit court abused its discretion by excluding as evidence of residual doubt the testimony of Morris Nellum proffered by the defen-

dant in mitigation because the overwhelming evidence adduced in aggravation against the defendant would render any such error harmless.

Defendant maintains that the State's use of a "large billboard" was misleading and inflammatory and denied him his right to a fair sentencing hearing. He relies in part upon this court's decision in *People v. Williams* (1994), 161 Ill. 2d 1, 66-69, in which we condemned the use of an eight-foot chart to which placards were taped restating the testimony of each witness concerning the date of each offense committed by the defendant, the nature of each crime, each case number, the name of each victim, and any sentence imposed. We concluded that the chart unfairly memorialized and unduly emphasized the evidence in aggravation, a problem aggravated by the State's argument concerning its "outrageous size." The instant chart, bearing the heading, "Adult Life of Murray Hooper," contains in chronological order a list of the events related to defendant's criminal conduct and highlights five boxes that contain the number of days between defendant's parole from the penitentiary on four separate occasions and his commission of a subsequent offense as well as the number of days between his commission of the murders of Pettigrew, Holliman, and Lacey in Illinois and his commission of the murders of Phelps and Redmond, as well as the attempted murder, in Arizona. In permitting the jurors to have access to this chart, which measures approximately three feet by four feet, the circuit court observed that "[t]here is nothing on this chart that was not testified to." However, the court expressed the view that it would give the jury

"a perspective, an idea in aggravation as to what [defendant] has done since 11-22-62 until 12-24-82, his life of crime. That is relevant to this hearing and it gives the jury an idea as to what periods to contrast it with the portrayal of him through witnesses for the defense in a

mitigation hearing and I think it would help the jury in making their determination."

The circuit court also observed that "[t]he jury has a right to know all about Mr. Hooper and this facilitates their decision." Whether it was an abuse of discretion on the part of the circuit court to permit the use of this chart we need not decide because it is impossible that any error associated with its use could have been more than harmless in light of the overwhelming evidence amassed by the State in aggravation against this defendant.

Defendant complains of error resulting from the State's improper and inflammatory reference to his prior conviction for voluntary manslaughter as "murder," an error compounded, he contends, by certain testimony the State elicited concerning the reduction of the charge of murder in the death of the victim to the charge of voluntary manslaughter to which defendant pled guilty. During his opening statement the prosecutor apprised the jury, "Ladies and gentlemen, not only will you hear about the five murders, and you have heard about the five murders that he has already committed but you will find out that he also murdered somebody back in the early 60's." The prosecutor went on to identify this victim as defendant's girlfriend, Marvina Grant, and to explain that defendant had pled guilty to a reduced charge of voluntary manslaughter in association with her death.

The State called as a witness Gene Callahan, an attorney who in December of 1969 worked in the office of the State's Attorney in Cook County and prosecuted defendant following the shooting death of Grant. On direct examination this witness testified that defendant had fired five shots at the victim, three of which struck her, and that on December 17, 1969, defendant pled guilty to the reduced charge. On cross-examination the witness testified that in order for defendant to plead guilty, the

witness would have had to concur in the plea. When asked on cross-examination, "Do you recall what the specifics were on why this particular incident qualified as a voluntary manslaughter?" the witness answered, "Based on my review I would believe and based on what we did in those days there was a problem or some indication in this case of an argument. The evidence indicated the defendant knew the victim and I would assume that it was voluntary manslaughter because there were some indication [sic] of some type of argument." Asked on cross-examination, "You can't remember the specifics but there was something at the time that made this a voluntary manslaughter?" the witness answered in the affirmative. Upon redirect examination the prosecutor asked, "Sir, another reason this case would have been reduced would have been problems finding witnesses or fear to come in?" to which the witness responded, over the defendant's objection, "Absolutely. As I say I don't know but that would be a way we would dispose of a case if we thought we could not take a plea [sic] if it was indicated there were only two people present and no one else at the time of the crime." On re-cross-examination the witness indicated that he did not recall the reason for agreeing to a plea by the defendant to a lesser charge and that if he had the police reports he could probably give the reason but was unable to do so without them.

Although the State maintains that no error occurred in this regard, we must disagree. A fundamental principle of criminal jurisprudence is that a conviction of a lesser offense operates as an acquittal of a greater offense. (*Williams*, 161 Ill. 2d at 78.) Although defendant was initially charged with murder in the death of Grant, he was never convicted of that offense, and it was error for the prosecutor to say in his opening statement that defendant had "murdered" this victim when, in fact, de-

fendant had entered a plea of guilty to the offense of voluntary manslaughter in charges associated with her death. Although we disapprove highly of such conduct on the part of the State, the remark was an isolated comment made during an opening statement that ranged over all of the evidence the State expected to present and did not focus unduly upon this particular offense. (*Cf. Williams*, 161 Ill. 2d at 71-81 (prosecutor's comments concerning both the defendant's commission of "coldblooded murder" despite his plea of guilty to voluntary manslaughter and the sentence of 10 years imposed, although he "should be doing 120 for that crime," because "our system broke down and gave him a break" constituted almost all of the State's closing argument in rebuttal).) In view of the isolated nature of the prosecutor's remark, the jury's having heard evidence concerning not only the circumstances surrounding the defendant's commission of the crime but also the defendant's plea of guilty to the offense of voluntary manslaughter, and the nature and extent of the evidence arrayed in aggravation against him, it cannot be said that the prosecutor's misconduct in making this remark increased the likelihood that the verdict of the jury was based upon emotion rather than reason (*Williams*, 161 Ill. 2d at 77, 81). Nor can it be said under the circumstances here that this misconduct diverted the jurors' attention from the focus of their attention in a death penalty hearing, which must be the nature of the particular offense and circumstances surrounding it as well as the character and record of the defendant (*Williams*, 161 Ill. 2d at 77-78, 81). Hence, we conclude that this error does not require another sentencing hearing.

Defendant raises a number of issues challenging the constitutionality of the death penalty statute in Illinois. With respect to most of these questions he expressly acknowledges that this court has already resolved them

adversely to his position but, nevertheless, urges us to revisit the issues and to reconsider the rulings rendered with regard to them. He contends that denying him the right to present the final argument at the second phase of his sentencing hearing denied him a fair sentencing hearing because the defendant bears the burden of persuading the jury not to impose the death penalty; he asks that we reconsider the rulings of this court in *People v. Williams* (1983), 97 Ill. 2d 252, and in *People v. Caballero* (1984), 102 Ill. 2d 23. Defendant asserts that the death penalty statute in Illinois is unconstitutional because it fails to provide sufficient information-gathering procedures to insure adequate appellate review; he urges us to reconsider the holding of *People v. Stewart* (1984), 105 Ill. 2d 22. Defendant maintains that the death penalty statute in Illinois places upon the defendant at the capital sentencing hearing the burden of persuasion not to impose the death penalty; he requests that we reconsider the holding of *People v. Owens* (1984), 102 Ill. 2d 88. Similarly, he contends that the death penalty is imposed arbitrarily and capriciously as a result of vesting a standardless discretion in the prosecutor as to whether to request a death penalty hearing and argues that the death penalty statute in Illinois is unconstitutional for the reasons put forth in dissent in *People ex rel. Carey v. Cousins* (1979), 77 Ill. 2d 531, and in *People v. Lewis* (1981), 88 Ill. 2d 129, among other cases. Likewise, defendant maintains that the death penalty statute in Illinois is unconstitutional because it does not require the sentencer to make an ultimate determination that death is the appropriate punishment; however, as the State points out, this court has previously rejected such a claim (*People v. Jones* (1993), 156 Ill. 2d 225, 257; *People v. Morgan* (1986), 112 Ill. 2d 111, 146-47; *People v. Albanese* (1984), 104 Ill. 2d 504, 536-37). Inasmuch as the defendant advances no

new arguments in support of his positions, we decline to reconsider these issues.

As we have stated above, we have read the entire record for review. We have examined it with respect to the other issues defendant raises concerning the aggravation and mitigation phase of his capital sentencing hearing conducted upon remand and conclude that they are without merit.

Therefore, for the reasons stated above, we affirm the judgment of the circuit court of Cook County imposing a sentence of death. We hereby direct the clerk of this court to enter an order setting Tuesday, May 28, 1996, as the date on which the sentence of death entered by the circuit court of Cook County is to be carried out. The defendant shall be executed in a manner provided by law (725 ILCS 5/119—5 (West 1994)). The clerk of this court shall send a certified copy of the mandate in this case to the Director of Corrections, the warden at Stateville Correctional Center, and the warden of the institution where defendant is now confined.

*Affirmed.*